IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF NEW JERSEY

```
                             :
NATARAJAN VENKATARAM,        :        HON. JEROME B. SIMANDLE
                             :
               Plaintiff,    :        Civil No. 09-6520 (JBS/AMD)
                             :
     v.                      :
                             :              **OPINION**
OFFICE OF INFORMATION POLICY,:
                             :
               Defendant.    :
                             :
```

APPEARANCES:

Mr. Natarajan Venkataram
# 58513-054
Federal Correctional Institution
P.O. Box 2000
Camp Bldg. 6695
Fort Dix, NJ 08640
     Plaintiff Pro Se

Paul J. Fishman, United States Attorney
     By:  John Andrew Ruymann
          Assistant United States Attorney
OFFICE OF THE U.S. ATTORNEY
402 East State Street
Suite 430
Trenton, NJ 08608
     Counsel for Defendant


**SIMANDLE**, Chief Judge:

## I.  INTRODUCTION

     This matter concerns efforts by Plaintiff Natarajan
Venkataram to obtain documents from Defendant Office of
Information Policy, U.S. Department of Justice, related to the
government's decision not to prosecute his business associate,
D.V.S. Raju, who at one time was a co-defendant with Mr.

Venkataram on conspiracy, bribery and money laundering charges. Defendant now brings a second motion for summary judgment [Docket Item 57] in response to Plaintiff's motion to reopen the case and compel production of documents [Docket Item 52].

For the reasons discussed below, the Court finds that Defendant's <u>Vaughn</u> index and accompanying declarations demonstrate that Defendant properly withheld the 16 documents at issue. Therefore, the Court will enter summary judgment in favor of Defendant.

## II.  Background.

The instant case involves a claim under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(B).  Plaintiff seeks records from the Office of Information Policy pertaining to the indictment and subsequent cancellation of the indictment of Mr. Raju, who was a co-defendant with the Plaintiff on conspiracy, bribery and money laundering charges.[1]

Initially, Defendant refused to turn over any documents, neither confirming nor denying their existence, and asserting that disclosure would violate the Privacy Act, 5 U.S.C. § 552(a), and that records would be exempt from release under 5 U.S.C. §

---

[1] This Court previously recounted the facts of this case in <u>Venkataram v. Office of Info. Policy</u>, No. 09-6520, 2011 WL 2038735, at *1 (D.N.J. May 25, 2011). For more information about the criminal charges, see Superseding Indictment, <u>United States v. Venkataram</u>, Crim. No. 06-102-RPP-3 (S.D.N.Y. filed June 21, 2006), ECF No. 24.

552(b)(6) and (b)(7)(C) ("Exemption 6" and "Exemption 7(C)").

Venkataram, 2011 WL 2038735, at *1. After Plaintiff exhausted

administrative appeals, he brought suit in this Court, and

Defendant moved to dismiss or, in the alternative, for summary

judgment. Id. The Court denied Defendant's motion because

Defendant had invoked Exemptions 6 and 7(C) categorically. Id. at

*4. The Court ordered Defendant to show cause why the matter

should not be remanded to the Department of Justice ("DOJ"). Id.

Defendant then responded that the policy of the Executive Office

of the United States Attorneys ("EOUSA") supported a categorical

denial of the request, relying primarily on the Privacy Act. See

Venkataram v. Office of Info. Policy, 823 F. Supp. 2d 261, 264

(D.N.J. 2011). Defendant also argued that remand would be

improper because a "Glomar response," neither confirming nor

denying the existence of records sought, could be entered in this

case. Id. at 265. The Court rejected Defendant's arguments and

remanded the matter to the DOJ for a more particularized analysis

of the documents requested. Id. at 266.

    Seven months later, on May 30, 2012, Plaintiff filed a

motion for an order to show cause, stating that he had received

no response from Defendant and no indication that a

particularized analysis, known as a Vaughn index, was

forthcoming. See Venkataram v. Office of Info. Policy, No. 09-

6520, 2012 WL 3283485, at *1 (D.N.J. Aug. 9, 2012) (recounting

the procedural history). Defendant initially responded that it had complied with the Court's order and provided 90 pages to Plaintiff, along with a <u>Vaughn</u> index, but on July 16, 2012, Assistant U.S. Attorney ("AUSA") J. Andrew Ruymann advised the Court that the previous averment of compliance was made in error and additional records needed to be searched in the U.S. Attorney's Office in the Southern District of New York ("S.D.N.Y."). <u>Id.</u> No explanation was given for the error or why the S.D.N.Y. documents had not been identified sooner. <u>Id.</u> Plaintiff immediately filed a motion for contempt, which the Court denied, reasoning that there was no evidence of bad faith or that the proposed extended search schedule was unreasonable. <u>Id.</u> at *2. The Court ordered Defendant's revised response would be due 45 days after Plaintiff tendered pre-payment of the estimated search fee. <u>Id.</u>

Plaintiff filed a motion for a fee waiver, which the Court denied. <u>Venkataram v. Office of Info. Policy</u>, No. 09-6520, 2012 WL 4120438, at *3 (D.N.J. Sept. 18, 2012), ECF No. 43. The Court observed that Plaintiff himself had characterized delays by Defendant as "damaging to [Plaintiff's] efforts in other, related, federal civil litigation." <u>Id.</u> Therefore, the Court concluded that "disclosure primarily would benefit Plaintiff and not contribute significantly to public understanding of the U.S. Attorney's Office and the process by which it decides not to

prosecute subjects of criminal investigations." Id. After

Plaintiff pre-paid the search fee, Defendant notified the Court

that it had released 352 pages in full and one page in part, and

withheld 205 pages in full, and provided Plaintiff an updated

Vaughn index.[2] [Docket Item 46.] The Vaughn index described 16

documents withheld under one or more of the following exemptions:

§ 552(b)(3), (b)(5), (b)(6), (b)(7)(C), and Fed. R. Crim. P.

6(e). (Kornmeier Decl. Exs. B & C.) The Court then entered an

order denying Plaintiff's motion for order to show cause [Docket

Item 47], acknowledging that the "Court makes no determination

regarding the substance of the Vaughn index and FOIA production,

---

[2] Plaintiff correctly observes, in his opposition to the
pending motion for summary judgment, that while the cover sheet
to Defendant's updated Vaughn index indicates that 205 pages were
withheld in full, the Vaughn index itself only describes 165
pages withheld in full, plus one page withheld in part. (Pl.
Opp'n [Docket Item 58] at 9; Second Declaration of John W.
Kornmeier ("Second Kornmeier Decl.") [Docket Item 57-3], Ex. B.)
Mr. Kornmeier acknowledges and explains this disparity in his
declaration by stating: "After a recount of the actual documents
withheld, the number has been determined to be 166. This recount
also led to a change to Document 9 in the Vaughn index in Exhibit
C from 58 to 57 pages." (Second Kornmeier Decl. ¶ 7 n.1.)
     The 39-page margin of error and the fact that Defendant only
identifies the source of error for one missing page, a
miscounting of Document 9, are considered. However, the
government's affidavits are accorded a presumption of good faith
that cannot be overcome by mere speculation. Negley v. FBI, 169
F. App'x 591, 594 (D.C. Cir. 2006). As explained in Part III.B,
Plaintiff has not alleged the existence of any documents that
have not been produced or described in the Vaughn index; the
primary document he seeks has been identified. The Court
therefore accepts Defendant's position that all responsive
documents withheld have been produced or described in the Vaughn
index.

as no substantive issue has been presented." [Id.] The Court

stated that "if Plaintiff seeks additional relief from the Court

on this matter, the Plaintiff may seek to reopen the docket upon

filing an appropriate motion." [Id.] The Court denied Plaintiff's

motion for reconsideration. [Docket Item 51.]

Plaintiff then brought the present motion to reopen the case

and to compel production of the documents, arguing that Defendant

had completed an inadequate search, improperly invoked statutory

exemptions and failed to demonstrate that all reasonably

segregable portions of documents had been released. [Docket Item

52.] Defendants sought leave to file a motion for summary

judgment in opposition to Plaintiff's motion to reopen and

compel. [Docket Item 53.] The Court reopened the case and granted

Defendant leave to file the present motion for summary judgment.

[Docket Item 55.] After an extension of time, Defendant filed the

motion, arguing that Defendant's search was reasonable, Defendant

properly invoked exemptions, and the withheld documents were not

reasonably segregable. [Docket Item 57.]

## III.  DISCUSSION

### A.  Summary judgment standard[3]

---

[3] As an initial matter, Plaintiff argues that a motion for
summary judgment is procedurally inappropriate in this case. (Pl.
Opp'n at 6-7.) He contends that this Court's previous order
instructed him to seek further relief from the Court by filing an
appropriate motion, and the Court should decide his motion to
compel. (Id. at 6.) However, it is true, as Defendant observes,
that FOIA requests often are decided on summary judgment. See,

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if, based on the evidence in the record, a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it might affect the outcome of the suit. Id. The court will view evidence in the light most favorable to the non-moving party and extend any reasonable favorable inferences to be drawn from that evidence to that party. Hunt v. Cromartie, 526 U.S. 541 (1999). However, the

---

e.g., Kishore v. U.S. Dep't of Justice, 575 F. Supp. 2d 243, 251-52 (D.D.C. 2008) ("Summary judgment is the frequent vehicle for resolution of a FOIA action because the pleadings and declarations in such cases often provide undisputed facts on which the moving parties are entitled to judgment as a matter of law.") Both a motion to compel and a motion for summary judgment require the Court to review whether Defendant adequately invoked statutory exemptions to withhold certain documents. Because Plaintiff has had an opportunity to respond fully to Defendant's motion, including by Sur-Reply, and for the sake of efficiency, the Court first will consider Defendant's motion for summary judgment, and, if necessary, Plaintiff's motion to compel. See, e.g., People for the Am. Way Found. v. Nat'l Park Serv., 503 F. Supp. 2d 284, 288, 303, 309 (D.D.C. 2007) (considering a motion for summary judgment and a motion to compel simultaneously).

Plaintiff makes an unavailing citation to Abdelfattah v. U.S. Dep't of Homeland Sec., 488 F.3d 178 (3d Cir. 2007), a case in which the Third Circuit vacated in part the district court's grant of summary judgment in favor of the defendant. (Pl. Opp'n at 6.) Nothing in Abdelfattah suggests that FOIA requests cannot or should not be decided by summary judgment. The Court observes that there is a difference between whether a motion for summary judgment is appropriate procedurally and whether the motion should be granted on the merits.

"nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial[.]'" Russo v. United States, 576 F. Supp. 2d 662, 666 (D.N.J. 2008) (quoting United States v. Premises Known as 717 S. Woodward St., 2 F.3d 529, 533 (3d Cir. 1993)).

In the context of FOIA, "the burden is on the agency to sustain" the withholding of certain documents and to demonstrate that the documents withheld fell within one of the statutory exemptions. 5 U.S.C. § 552(a)(4)(B); see also Manna v. U.S. Dep't of Justice, 51 F.3d 1158, 1163 (3d Cir. 1995). District courts determine the matter de novo. § 552(a)(4)(B).

An agency will prevail on a summary judgment motion if the agency's affidavits "describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Berger v. IRS, 487 F. Supp. 2d 482, 493 (D.N.J. 2007) (quoting Davin v. U.S. Dep't of Justice, 60 F.3d 1043, 1050 (3d Cir. 1995)) (internal quotation marks omitted). A court "may award summary judgment 'on the basis of agency affidavits alone where the affidavits are sufficiently detailed and in good faith.'"

Berger, 487 F. Supp. 2d at 493 (quoting Manna v. U.S. Dep't of Justice, 832 F. Supp. 866, 870 (D.N.J. 1993), aff'd, 51 F.3d 1158 (3d Cir. 1995)). Agency affidavits generally are "accorded a presumption of good faith which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." Negley v. FBI, 169 F. App'x 591, 594 (D.C. Cir. 2006) (quoting SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

## B. Adequacy of the search

FOIA requires that an agency conduct a reasonable search for responsive records. Adbelfattah v. U.S. Dep't of Homeland Sec., 488 F.3d 178, 182 (3d Cir. 2007). "The relevant inquiry is not 'whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Id. (quoting Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)) (emphasis in original). An agency will prevail on summary judgment if it provides a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." Id. (quoting Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999) and Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990)).

Plaintiff argues that Defendant's search was inadequate

"because it failed to produce records pertaining to his application for relief . . . ." (Pl. Mot. [Docket Item 52] at 2.) Plaintiff also asserts that Defendant failed to provide an affidavit describing the search. (Id.) In his opposition to the motion for summary judgment, Plaintiff adds that the "main document in question" -- the agreement between the United States and Mr. Raju to nolle prosequi the case, which Plaintiff asserts was created in June 2007 -- "has been acknowledged as being in existence by the United States Attorney's Office for the Southern District of New York; yet it was not produced nor was its existence recognized by Defendants." (Pl. Opp'n at 8-9; Pl. Sur-Reply [Docket Item 60] at 1.)

Defendant submits three declarations in support of its motion. First, Michelle Smith, a paralegal and FOIA/Privacy Act contact in the U.S. Attorney's Office in the S.D.N.Y., describes the steps she took to retrieve 33 boxes of records from the Federal Records Center in Missouri and additional records from AUSA Andrew Dember, the prosecutor, and forward them to the EOUSA for review. (Smith Decl. [Docket Item 57-4] ¶¶ 2-7.) Second, Mr, Kornmeier, an attorney advisor with the EOUSA, declares that "all responsive documents" were forwarded to the EOUSA. (Second Kornmeier Decl. ¶ 6.)

Regarding the allegedly missing document, Mr. Kornmeier clarifies that the document Plaintiff seeks actually appears as

Document 2 on the <u>Vaughn</u> index. (Third Declaration of John. W. Kornmeier ("Third Kornmeier Decl.") [Docket Item 64] ¶ 5.) He declares:

> The confusion apparently stems from the fact that the document is dated January 12, 2007, whereas Mr. Venkataram states the date was in June 2007. An examination of the document shows that although the date of the document, an offer contained in a letter, is January 12, 2007, the date of the acceptance of the offer is not until June 2007.

(<u>Id.</u>)

These declarations are sufficient to demonstrate that the Defendant's search in this case was reasonable and adequate. An agency's search need not be exhaustive; it need only be adequate. <u>Adbelfattah</u>, 488 F.3d at 182. The search returned 518 responsive documents, 382 of which were released in full. (Second Kornmeier Decl. Ex. B.) Mr. Kornmeier's declaration suffices to demonstrate that the primary document Plaintiff seeks was uncovered in Defendant's search and described in the <u>Vaughn</u> index, even though Plaintiff expected the document to bear a different date. Indeed, both Documents 2 and 4 of the <u>Vaughn</u> index "contain[] an agreement between the parties on Mr. Raju's case." (Second Kornmeier Decl. Ex. C at 1-2.) Plaintiff has not set forth facts that show the search was insufficient or failed to produce specific documents, other than those adequately answered by Defendant's affidavits, which are entitled to a presumption of good faith. <u>See</u> <u>Russo</u>, 576 F. Supp. 2d at 666 (stating that the

non-moving party must set forth specific facts showing a genuine issue for trial); Negley, 169 F. App'x at 594 (stating that agency affidavits are entitled to a presumption of good faith). Therefore, the Court will grant summary judgment in favor of Defendant on the issue of the adequacy of Defendant's record search.

### C. Exemption 5

Section 552(b)(5) permits agencies to withhold documents that are "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]" Exemption 5 encompasses both "the work product privilege" and "the governmental deliberative process privilege." Berger, 487 F. Supp. 2d at 498-99 (citing Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001)); see also Heggestad v. U.S. Dep't of Justice, 182 F. Supp. 2d 1, 6-7 (D.D.C. 2000) (stating the "exemption has been construed to encompass documents normally privileged in the civil discovery context," including documents protected by the work product and deliberative process privileges) (citing NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149, 151 (1975)). Defendant invokes this exemption for Documents 7, 8, 9, 10, 12, 13 and 14 of the Vaughn index, which together account for 138 of the 165 pages withheld in full.

### i. Work product protection

The work product doctrine protects the confidentiality of documents prepared by or for attorneys in anticipation of litigation. <u>Berger</u>, 487 F. Supp. 2d at 499-500; <u>In re Chevron Corp.</u>, 633 F.3d 153, 164 (3d Cir. 2011). The privilege covers both factual material prepared in anticipation of litigation and mental impressions. <u>See, e.g.</u>, <u>Tax Analysts v. IRS</u>, 117 F.3d 607, 620 (D.C. Cir. 1997). Exemption 5 protection extends to documents "created by an attorney in the course of an investigation prior to a decision to litigate" or those that "consider[] or recommend[] closing an investigation instead of litigating a case." <u>Heggestad</u>, 182 F. Supp. 2d at 11 (citing <u>SafeCard Servs., Inc.</u>, 926 F.2d at 1202, and <u>A. Michael's Piano, Inc. v. Fed. Trade Comm'n</u>, 18 F.3d 138, 146 (2d Cir. 1994)).

The documents withheld under Exemption 5 include internal U.S. Attorney's Office memos discussing "the proposed <u>nolle prosequi</u> for Mr. Raju" (Documents 7, 8), notes prepared by or for AUSA Dember or by the New York City Department of Investigation in anticipation of prosecution of Mr. Raju (Document 9), a memo prepared for AUSA Dember discussing potential witnesses against Mr. Raju and facts about the alleged fraud (Document 10), a page from a draft of an agreement to settle Mr. Raju's case with the government (Document 12), e-mails discussing the case and the merits of settlement between or among AUSA Dember, other members of the U.S. Attorney's Office, and the Department of

Investigation (Document 13), and investigative material prepared by the Department of Investigation detailing, among other things, a chronology of the case, monies received and dispersed, and summaries of documents produced in response to a Grand Jury Subpoena (Document 14). (Second Kornmeier Decl. Ex. C.) The <u>Vaughn</u> index entries for these documents include assertions that each document "is attorney work product, which contains no non-exempt material. Therefore, there is nothing to segregate." (<u>Id.</u>)

Defendant argues that these records, which "reflect such matters as trial preparation, trial strategy, interpretations, and personal evaluations and opinions pertinent to Mr. Raju's criminal case" and which were "prepared by an attorney or at an attorney's request" squarely fit within the work-product privilege. (Def. Mot. Br. at 19-20; Second Kornmeier Decl. ¶ 13.)

Plaintiff first argues that Defendant waived its right to claim Exemption 5 because Defendant did not invoke the exemption in its first motion for summary judgment. (Pl. Opp'n at 5.) This argument is without merit. In FOIA cases, a district court may consider new claims of exemption raised for the first time after remand. <u>Lame v. U.S. Dep't of Justice</u>, 767 F.2d 66, 71 (3d Cir. 1985) (citing with approval <u>Jordan v. U.S. Dep't of Justice</u>, 591 F.2d 753, 779-80 (D.C. Cir. 1978), <u>overruled in part on other grounds</u>, <u>Crooker v. Bureau of Alcohol, Tobacco & Firearms</u>, 670 F.2d 1051 (D.C. Cir. 1981)).

In this case, Defendant initially and improperly claimed Exemptions 6 and 7(C) categorically, and the Court, ordering Defendant to show cause why the matter should not be remanded, stated that Defendant would need to assert a different basis for withholding the documents or produce a particularized accounting of withheld material. <u>See</u> <u>Venkataram</u>, 2011 WL 2038735, at *4 ("it is now clear that Defendant must either rely on some other basis for withholding the records, or else perform a document-by-document review of responsive records"). On remand, Defendant did just that; Defendant created a <u>Vaughn</u> index which, for the first time, evinced a document-by-document analysis, and Defendant was well within its right to assert any and all exemptions it believed covered each document. Defendant continues to assert that all documents covered by Exemption 5 also qualify for Exemptions 6 and 7(C). In sum, there is nothing inconsistent about Defendant's submissions to this Court. There has been no waiver.

Plaintiff next argues that "[e]ven if the Court finds that the Section 552(b)(5) exemption has not been waived, the documents should be produced for the Court's in camera inspection and determination as to segrability." (Pl. Opp'n at 7.) Plaintiff thus appears to argue only that non-privileged portions of these documents should be produced; Plaintiff does not argue that these documents do not qualify as work product or that they do not

15

contain deliberative material. The Court agrees with Defendant and, apparently, Plaintiff that the documents withheld under Exemption 5 qualify as attorney work product. The Court bases this finding on the detailed Vaughn index descriptions and averments of Mr. Kornmeier. Therefore, the Court will grant summary judgment in favor of Defendants for all documents claimed under Exemption 5 if Defendant has met its segregability requirement.

**ii. Segregability**

Agencies are "entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007). Such a presumption may be overcome by a "quantum of evidence," which means that the plaintiff must, at least, "produce evidence that would warrant a belief by a reasonable person" that segregable material exists. See id. (quoting Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 174 (2004) and observing that United States v. Chem. Found., Inc., 272 U.S. 1, 14-15 (1926), requires a more demanding showing to overcome the presumption). An agency satisfies its segregability obligations by "(1) providing a Vaughn index that adequately describes each withheld document and the exemption under which it was withheld; and (2) submitting a declaration attesting that the agency released all segregable material." Muttitt v. Dep't of State, No.

10-202, 2013 WL 781709, at *14, *21 (D.D.C. Mar. 4, 2013) (citing Loving v. Dep't of Def., 550 F.3d 32, 41 (D.C. Cir. 2008)).

Here, Defendant provides a detailed description of each document withheld under Exemption 5 and states in the Vaughn index that, because the entirety of the documents qualify as attorney work product, no segregable material exists. (Second Kornmeier Decl. Ex. C.) Mr. Kornmeier's declaration further asserts, albeit within the section discussing Exemption 7(C), that "[n]o additional segregable portions were determined releaseable from materials in the Vaughn Index . . . ." (Second Kornmeier Decl. ¶ 20.) Mr. Kornmeier also states: "The attorney work product and deliberative process are so interwoven as to make it all, in essence, attorney work product." (Id. ¶ 14.)

Combined, these descriptions and statements justify Defendant's withholding the entire exempted documents. The Court finds that Defendant has met its segregability obligation for the documents withheld under Exemption 5. Therefore, those documents have been properly identified, described and withheld from Plaintiff. Summary judgment will be entered in favor of Defendants for Documents 7, 8, 9, 10, 12, 13, and 14.

### iii. Deliberative process privilege

Even if these documents did not qualify as work product, most of them would qualify for Exemption 5 under the deliberative

process privilege.[4]

The deliberative process privilege exists to "protect the quality of agency decision-making." NLRB, 421 U.S. at 151. For a document to qualify for the deliberative process privilege, it must be (1) "predecisional, that is, 'antecedent to the adoption of agency policy,'" and (2) "deliberative in nature, i.e., it must be 'a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters.'" Heggestad, 182 F. Supp. 2d at 7. "The agency must establish 'what deliberative process is involved, and the role played by the documents in issue in the course of that process" and "must describe 'the nature of the decisionmaking authority'" vested in the person or office making the decisions. Muttitt, 2013 WL 781709, at *17 (citing Senate of P.R. v. U.S. Dep't of Justice, 823 F.2d 574, 585-86 (D.C. Cir. 1987) and Elec. Frontier

---

[4] Arguably, the description of Document 12 is insufficient to claim deliberative process privilege: "One page of a draft document from Mr. Raju's agreement to settle his case with the government." (Second Kornmeier Decl. Ex. C. at 7.) The Index further states that Document 12 "was prepared in anticipation of litigation, [and] contains information used by the government to determine how to treat Mr. Raju's case." (Id.) Material otherwise properly withheld from disclosure under Exemption 5 loses its exempt status if the agency "expressly incorporates the material in its final decision." Berger, 487 F. Supp. 2d at 499 (quoting Cuccaro v. Sec'y of Labor, 770 F.2d 355, 358 (3d Cir. 1985)). To the extent the final decision or agreement with Mr. Raju expressly incorporates the page of the draft withheld as Document 12, the document arguably would lose its deliberative process privilege, although the agreement could qualify for an exemption independently.

Found. v. U.S. Dep't of Justice, 826 F. Supp. 2d 157, 168 (D.D.C. 2011)).

Courts have held that documents containing deliberations about whether to pursue prosecution or declining prosecution may qualify for Exemption 5. See Berger, 487 F. Supp. 2d at 499 (holding that a letter memorializing the U.S. Attorney's decision not to prosecute a plaintiff qualified for the deliberative process privilege because the analysis and recommendations contained in the letter preceded the ultimate determination by the DOJ not to prosecute); Jackson v. U.S. Attorney's Office, 293 F. Supp. 2d 34, 40-41 (D.D.C. 2003) (holding that the deliberative process privilege protects an investigating AUSA's notes when drafted "in deciding whether to prosecute a criminal complaint"); Heggestad, 182 F. Supp. 2d at 10-11 (rejecting the plaintiff's argument that documents were "not subject to the deliberative process and attorney work product privileges because they recommend declining prosecution," because such a contention "is unsupported by fact and law"); SafeCard Servs. Inc., 926 F.2d at 1202 (stating that documents created by an attorney in the course of an investigation prior to a determination to litigate may be protected); A. Michael's Piano, Inc., 18 F.3d at 146-47 (affirming the district court's ruling that Exemption 5 applies "even if a staff attorney is considering or recommending closing an investigation").

In this case, the <u>Vaughn</u> index clearly demonstrates that the withheld documents were created prior to the final decision not to prosecute Mr. Raju and that they contain or reveal opinions or recommendations about whether to prosecute Mr. Raju. The index describes documents created by or sent to attorneys who were integral to the ultimate decision or recommendation that the government cancel the indictment of Mr. Raju. Therefore, Documents 7, 8, 9, 10, 13 and 14 also qualify for the deliberative process privilege, and Defendant would be entitled to summary judgment as to those documents.

### D. Exemption 7(C)

Exemption 7(C) permits an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy[.]" § 552(b)(7)(C). To determine if the release of information would constitute an "unwarranted" invasion of privacy, the court "must balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect." <u>ACLU v. U.S. Dep't of Justice</u>, 655 F.3d 1, 6 (D.C. Cir. 2011) (quoting <u>U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press</u>, 489 U.S. 749, 776 (1989)). The U.S. Supreme Court has said that "whether disclosure of a private document under Exemption 7(C) is

warranted must turn on the nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny." Reporters Comm., 489 U.S. at 772 (quoting Dep't of Air Force v. Rose, 425 U.S. 352, 372 (1976)) (internal quotation marks omitted). When privacy concerns addressed by Exemption 7(C) are present, the requester must "establish a sufficient reason for the disclosure." Favish, 541 U.S. at 172. The requester "bears the burden of showing (1) that 'the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake,' and (2) that the information he seeks 'is likely to advance that interest.'" Roth v. U.S. Dep't of Justice, 642 F.3d 1161, 1174-75 (D.C. Cir. 2011) (quoting Favish, 541 U.S. at 172).

Defendant invokes Exemption 7(C) for Documents 1, 2, 3, 4, 5, 6, 11, 15 and 16, which together account for 27 pages withheld in full and one page withheld in part. (Second Kornmeier Decl. Ex. C.) These documents include letters between AUSA Dember, Mr. Raju's attorney, and others, discussing the proposed settlement of Mr. Raju's case (Documents 1, 2 & 4), letters sending records regarding Mr. Raju to attorneys involved in the case (Documents 3 & 5), a proffer letter "detailing what Mr. Raju had to say as to the facts of his case" (Document 6), and a signed proffer agreement (Document 11). (Id.) Documents 15 (business

correspondence between Mr. Raju and a third party) and 16 (e-mail concerning a business contract) were not originally created by law enforcement officials but became part of Defendant's file. (Id.)

Defendant asserts that the "EOUSA applied Exemption 7(C) to withhold the identities of and personal information about Mr. Raju and other third party individuals," including "individuals such as special federal agents, government employees, and local law enforcement personnel who participated in the investigation and prosecution of this case." (Def. Mot. Br. at 23.) Defendant asserts that "[i]ndividual duties and assignments are not public and such publicity as would likely arise from disclosure would seriously impede, if not totally jeopardize, law enforcement effectiveness in subsequent cases, even subjecting such individuals to harassment or harm." (Id. at 23-24.) In the Vaughn index itself, Defendant states that each "private confidential" document concerns "Mr. Raju's criminal case and as such implicates his fundamental right to privacy. There are no public interests to weigh against this privacy since the subject is Mr. Raju's criminal case and not the government's behavior." (Second Kornmeier Decl. Ex. C.)

Plaintiff does not contest, and the Court finds, that these

documents were compiled for law enforcement purposes.[5]

Plaintiff's main argument in favor of disclosure is that Mr. Raju has no privacy interest in these documents. Plaintiff contends that Mr. Raju was formally indicted on criminal charges and, thus, disclosure of "the requested records would not associate Mr. Raju 'unwarrantedly with criminal activity.'" (Pl. Opp'n at 4.) Plaintiff suggests that the public has "a right to know why two codefendants, charged with the same offenses, were not treated similarly and what the Government's criteria methodology and rationales were in deciding to nolle prosequi D.V.S. Raju's case[.]" (Id.) Plaintiff further asserts that the "public and press have a vested interest in seeing how our government operates; e.g., knowing whether the federal government was deprived of millions of dollars due to the nolle prosequi that enabled Raju's unjust enrichment; and learning how the Office of the U.S. Attorney employs its discretionary power." (Pl. Sur-Reply at 2.)

Plaintiff also suggests that Defendant's invocation of

_____

[5] This finding is self-evident for Documents 1 through 6 and Document 11. Even though Documents 15 and 16 were not originally created by law enforcement or during the process of the investigation or litigation, the records still may be considered "compiled for law enforcement purposes." See Crowell & Moring v. Dep't of Def., 703 F. Supp. 1004, 1006-1010 (D.D.C. 1989) (concluding that records do not need to be created or generated by law enforcement to be "compiled" for law enforcement purposes by the agency and examining amendments to Exemption 7 language to support this conclusion).

Exemptions 6 and 7(C) is improper because the Court has rejected these exemptions (Pl. Opp'n at 4), but this is a misreading of the Court's orders. The Court merely instructed Defendant not "to reargue categorical exemptions which this Opinion rejects." Venkataram, 823 F. Supp. 2d at 266. Defendant asserts each exemption individually in the present Vaughn index, and thus, does not contravene this Court's orders. This Court did not exclude Exemptions 6 and 7(C) from application on an individual document basis.

The Court will conduct the required balancing test, considering privacy interests first and then public interests at stake here.

### i. Privacy interest

In general, the privacy interests of an individual who has been formally indicted but never prosecuted are somewhat stronger than those who have been convicted or entered a public plea and somewhat weaker than those who have been investigated but never publicly charged. Cf. ACLU, 655 F.3d at 7 (stating that a convicted defendant has weaker privacy interests than those "individuals who have been acquitted or whose cases have been dismissed" and "plainly substantially weaker than the privacy interests of individuals who have been investigated but never publicly charged at all"); Judicial Watch, Inc. v. U.S. Dep't of Justice, 898 F. Supp. 2d 93, 105 (D.D.C. 2012) ("Although public

disclosure of a person's association with criminal activity does not waive that person's privacy interests completely, such public disclosure diminishes the person's privacy interests to some degree.").

The D.C. Circuit has emphasized that a person's privacy interest in information diminishes when that information is already freely available to the public. ACLU, 655 F.3d at 9 (citing Reporters Comm., 489 U.S. at 763-64, for the proposition that "information may be classified as 'private' if it is . . . not freely available to the public"). In ACLU, the DOJ withheld a list of case names and docket numbers for 255 criminal prosecutions in which the police used mobile location tracking data without first securing a warrant. Id. at 4. Conducting a balancing test under Exemption 7(C), the D.C. Circuit repeatedly observed that the information sought, or the personal information that the documents would reveal, was "information that is available in public records." Id. at 8-10. The court acknowledged that even public information can be protected in certain circumstances, as was the case with the comprehensive "rap sheets" at issue in Reporters Comm., 489 U.S. at 762, 780. Id. at 9. But the court distinguished the requested case names and docket numbers, which at most would disclose "the fact of a single conviction" for an individual, from the rap sheets in Reporters Comm., which plucked publicly available information

from "practical obscurity" and presented a comprehensive compilation of an individual's criminal history. Id. at 9-10. After the court found that disclosure would not compromise much more than a de minimis privacy interest for the convicted individuals and that a significant public interest existed in the data sought, the court concluded that disclosure of the information did not constitute an unwarranted invasion of privacy under Exemption 7(C). Id. at 12, 16.

In this case, some information about Mr. Raju is already available to the public. The facts that Mr. Raju was indicted on criminal charges and that the indictment was cancelled are a matter of public record. The content of the superseding indictment is also publicly available. Because the documents sought by Plaintiff concern only a single indictment, and not a comprehensive compilation of any criminal activity, Mr. Raju has little or no legitimate privacy interest in the publicly available information implicated in this case. See ACLU, 655 F.3d at 9-10 (describing only a limited incursion on privacy with the disclosure of documents that reveal "the fact of a single conviction, not a comprehensive scorecard of a person's entire criminal history across multiple jurisdictions"). Mr. Raju's interest in keeping private that he was subject of an investigation was greatly diminished, if not extinguished, when he was formally indicted. Cf. Fund for Constitutional Gov't v.

<u>Nat'l Archives & Records Serv.</u>, 656 F.2d 856, 864 (D.C. Cir. 1981) (describing a strong privacy interest in keeping private the fact that an individual was the subject of an investigation, when the individual had <u>not</u> been charged with crimes); <u>Judicial Watch, Inc.</u>, 898 F. Supp. 2d at 103 (stating that "the revelation of the fact that an individual has been investigated for suspected criminal activity represents a significant intrusion on that individual's privacy cognizable under Exemption 7(C)") (quoting <u>Fund for Constitutional Gov't</u>, 656 F.2d at 865). Therefore, Mr. Raju's privacy interest in preventing disclosure of documents that would reveal (1) that he was the subject of an investigation, (2) the content of accusations or (3) the fact that the indictment was canceled is weak at best.

However, the documents sought by Plaintiff, if disclosed, would reveal additional information about Mr. Raju not currently available to the public. The documents claimed under Exemption 7(C) contain details about the criminal case against Mr. Raju, including financial records, as well as Mr. Raju's commentary "as to the facts of his case" and private business correspondence. (Second Kornmeier Decl. Ex. C. at 1-3, 7, 10.) Disclosure of factual information tending to corroborate the criminal allegations against Mr. Raju, or of any admission of guilt or statement discussing Mr. Raju's alleged involvement in criminal activity, goes beyond what is available in the public record and

would represent a significant intrusion on Mr. Raju's privacy. For the purposes of this information, Mr. Raju's privacy interest is more analogous to that of an individual who was investigated and never charged, rather than a convicted criminal, because the evidence against him was never aired in a public criminal proceeding. Cf. ACLU, 655 F.3d at 9 ("The fact that information about these proceedings is readily available to the public reduces further still the incursion on privacy resulting from disclosure."). Courts have recognized that individuals who have been acquitted or whose cases have been dismissed retain a privacy interest in the facts of their criminal cases. Id. at 7 ("This is not to say that a convicted defendant has no privacy interest in the facts of his conviction. . . . But it is to say that those interests are weaker than for individuals who have been acquitted or whose cases have been dismissed."). To nolle prosequi a case is to abandon it or to have it dismissed. BLACK'S LAW DICTIONARY (9th ed. 2009). Although disclosure of these documents would not associate Mr. Raju with a criminal investigation for the first time, Mr. Raju nonetheless has a significant privacy interest in materials that go beyond the allegations and reveal details that would shed light on actual guilt or innocence, including any statements accepting responsibility for his actions or admitting guilt. Mr. Raju also has a privacy interest in statements he made concerning third

28

parties, including Plaintiff, to the extent those statements were never revealed during the criminal proceedings.

These documents also implicate privacy interests of third parties. The <u>Vaughn</u> index expressly discusses third parties related to Documents 15 and 16. Document 15 is correspondence between Mr. Raju and a third party, negotiating Mr. Raju's purchase of an interest in the third party's project, as well as payment of a note. (Second Kornmeier Decl. Ex. C at 10.) The <u>Vaughn</u> index also states that this document "is included in the responsive material out of an abundance of caution as it appears to be irrelevant to the case involving Mr. Raju and Mr. Venkataram." (<u>Id.</u>) Document 16 is an e-mail concerning a business contract and was released to Plaintiff, except for the names of third parties, to protect their privacy. (<u>Id.</u>) The descriptions of the remaining documents claimed under Exemption 7(C) do not specifically mention third parties or state that third parties' privacy interests are at stake. Rather, the <u>Vaughn</u> index only suggests that the documents "implicate[] [Mr. Raju's] fundamental right to privacy." (<u>Id.</u>) Mr. Kornmeier's declaration asserts more generally that the material withheld under Exemption 7(C) reference the identities of third parties, including law enforcement and government employees. (Second Kornmeier Decl. ¶¶ 18-19.)

Because <u>Vaughn</u> index entries for Documents 1-6 and 11 make

no references to third parties, the interests of third parties cannot be used to justify withholding those documents. The interests of third parties may be considered when analyzing Documents 15 and 16.

### ii. Public interest

On the other side of the scale, the "only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to." Sussman, 494 F.3d at 1115 (quoting Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1282 (D.C. Cir. 1992) and Reporters Comm., 489 U.S. at 776); accord ACLU, 655 F.3d at 6. Where the privacy interest asserted "is to show that responsible officials acted negligently or otherwise improperly . . . , the requester must establish more than a bare suspicion in order to obtain disclosure. Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." Favish, 541 U.S. at 174. In such a case, "the public interest is 'insubstantial' unless the requester puts forward 'compelling evidence that the agency denying the FOIA request is engaged in illegal activity' and shows that the information sought 'is necessary in order to confirm or refute that evidence.'" Davis, 968 F.2d at 1282.

Here, Plaintiff suggests impropriety of the prosecutors' actions in his complaint: "The actions of the Assistant United

States Attorney are questionable and suspicious and should be subject to review to confirm that they have complied with their fiduciary duty to the citizens of the United States." (Compl. ¶ 27.) Plaintiff also argues that the public has "a right to know" why one co-defendant was prosecuted and the other was not, and that the public interest implicated is "seeing how our government operates; e.g., knowing whether the federal government was deprived of millions of dollars due to the nolle prosequi that enabled Raju's unjust enrichment; and learning how the Office of the U.S. Attorney employs its discretionary power." (Pl. Sur-Reply at 2; Pl. Opp'n at 4.)

To the extent Plaintiff justifies disclosure by suggesting government officials acted improperly, the public interest here is insubstantial, because Plaintiff has not put forward any compelling evidence that the Department of Justice was engaged in illegal activity when it decided not to prosecute Mr. Raju. See Davis, 968 F.2d at 1282. When balanced against Mr. Raju's privacy interests, and those of third parties (in Documents 15 and 16), the insubstantial public interest militates against disclosure of the documents.

Plaintiff's remaining argument is that disclosure of these documents would inform the public about the operations of the Department of Justice and the U.S. Attorney's Office, notably shedding light on the use of prosecutorial discretion. As the

31

U.S. District Court in the District of Columbia recently concluded, "a decision not to prosecute a person, standing alone, does very little to 'shed[] light on the agency's performance of its statutory duties.'" Judicial Watch, Inc., 898 F. Supp 2d. at 106 (citing the ABA Criminal Justice Standards, which notes that a "prosecutor may in some circumstances and for good cause consistent with the public interest decline to prosecute, notwithstanding that sufficient evidence may exist which would support a conviction"). There certainly is a public interest in learning about the Department of Justice's exercise of prosecutorial discretion, but the public value of disclosing these contested documents is limited because the records represent only a single data point. It is hard to extrapolate about the operations of an agency from one exercise of discretion.[6] The Court finds that Plaintiff has not shown any significant public interest in the disclosure of the remaining documents under Exemption 7(C) or that the release of these documents would advance that interest.

The Court does not hold that the public interest in disclosing documents related to a single criminal prosecution or decision not to prosecute is always insubstantial. The present case is not one in which there is any evidence of prosecutorial

---

[6] Compare this case with ACLU, 655 F.3d at 12-14, which found a strong public interest in records related to 255 criminal prosecutions.

impropriety, let alone compelling evidence, which would heighten the public interest value of disclosure.[7] Moreover, the Plaintiff himself has articulated a personal interest in disclosure that likely motivated his request and outweighs the purported public interest. He has argued to this Court that the government's withholding of the documents was "damaging to [Plaintiff's] efforts in other, related, federal civil litigation."[8] Venkataram, 2012 WL 4120438, at *3. This Court previously found, when reviewing Plaintiff's application for a FOIA fee waiver, that disclosure of the requested documents "primarily would benefit Plaintiff and not contribute significantly to public understanding of the U.S. Attorney's Office and the process by which it decides not to prosecute subjects of criminal investigations." Venkataram, 2012 WL 4120438, at *3.

Typically, when a requester seeks documents related to another private citizen, "the requester does not intend to

---

[7] Production of compelling evidence of illegal activity is not required when the requester does not justify the request on those grounds. Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice, 846 F. Supp. 2d 63, 74 (D.D.C. 2012). However, any evidence of governmental misconduct would increase the public interest in disclosure and could be considered in a general balancing analysis of Exemption 7(C).

[8] The Southern District of New York recently denied Plaintiff's motion to compel discovery of documents related to Mr. Raju under Rule 16, Fed. R. Crim. P. Venkataram v. United States, Nos. 11-cv-6503, 11-cv-8005 & 06-cr-102, 2013 WL 245810, at *3 (S.D.N.Y. Jan. 23, 2013) (deciding discovery motions related to Plaintiff's coram nobis petition).

discover anything about the conduct of the agency that has possession of the requested records." Reporters Comm., 489 at 773. The main purpose of FOIA is "not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." Id.; see also Berger, 487 F. Supp. 2d at 502 ("The public interest in disclosure here is minimal; the primary value of disclosure is to Plaintiffs, not the public at large."). The Court finds no evidence that this is anything but the typical case described by the U.S. Supreme Court. Little would be revealed about the U.S. Attorney's Office by disclosing the details of Mr. Raju's proffer, especially when the government successfully prosecuted Mr. Raju's co-defendant, the Plaintiff here.

In ACLU, the D.C. Circuit discussed several factors that contributed to its finding of significant public interest value of the documents withheld in that case, including (1) widespread media attention given to cell phone tracking data, (2) congressional hearings on the law enforcement practice, (3) divided courts on the legal issue, and (4) an ongoing public policy discussion. Plaintiff does not suggest that these or similar factors are present and weigh in his favor in this case, other than to suggest that reporters from the New York Daily News have sought interviews with Plaintiff and that he "need only

telephone <u>The News</u> and release the information for publication."
<u>Venkataram</u>, 2012 WL 4120438, at *1. There is no evidence in the
record that suggests Plaintiff's criminal case, or the indictment
of Mr. Raju, garnered widespread media attention or that
revelations about the decision not to prosecute Mr. Raju would
garner such attention upon release of the records. Other than
Plaintiff's self-serving assertions, there is no evidence that
any journalist, organization or other individual has any interest
in disseminating the information gleaned from the withheld
documents to the public.

### iii. Balancing

Mr. Raju retains a strong privacy interest in non-public
facts and commentary about his alleged criminal conduct contained
in the withheld documents, as he never had to face a criminal
prosecution in open court and such details have not been
revealed. The Court finds there is an insubstantial public
interest in the disclosure of the details of Mr. Raju's proffer
and settlement agreement, because disclosure would reveal little
about the operations of the U.S. Attorney's Office. Documents 15
and 16, which concerned business transactions between Mr. Raju
and third parties, appear to contain no information regarding the
operations of Defendant, and thus no public interest would be
served by the release of the withheld documents or third party
identities. Based in part on Plaintiff's own statements, the

Court concludes that the primary purpose of this FOIA request is to serve private litigation interests, not the core transparency function of FOIA itself.

Plaintiff has not succeeded in showing a significant public interest to outweigh the privacy interests at stake or that the disclosure of the contested documents likely would advance that public interest. Therefore, disclosure of the documents would result in an unwarranted invasion of privacy. Defendant properly withheld documents under Exemption 7(C) and is entitled to summary judgment, if it satisfied its segregability obligations.[9]

### iv. Segregability

As previous discussed, agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material. Documents are properly withheld if described sufficiently in a <u>Vaughn</u> index, the exemption is

---

[9] The Court has considered the option of reviewing the remaining documents <u>in</u> <u>camera</u>. Such review is discretionary, and expressly permissible under the statute: ". . . the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions . . . ." 5 U.S.C. § 552(a)(4)(B). <u>In</u> <u>camera</u> review is justified when the <u>Vaughn</u> index and affidavits are insufficient to tell whether disclosure would reveal information that implicates privacy interests. <u>Mays v. DEA</u>, 234 F.3d 1324, 1328 (D.C. Cir. 2000) (ordering in camera review because the Vaughn index was insufficient to tell whether disclosure would reveal identities of third parties). At the same time, <u>in</u> <u>camera</u> review is disfavored, and only should be ordered when the Vaughn index and affidavits are insufficient. <u>Berger</u>, 487 F. Supp. 2d at 494. Here, the materials of record in the <u>Vaughn</u> index and in the government's affidavits suffice for judicial review.

identified, and the agency submits a declaration attesting that it released all segregable material. <u>Muttitt</u>, 2013 WL 781709, at *14, *21.

Here, the <u>Vaughn</u> index described the documents with adequate detail and Mr. Kornmeier declared that "[n]o additional segregable portions were determined releaseable from materials in the Vaughn Index, other than what is therein identified as released in part." (Second Kornmeier Decl. ¶ 20.) Combined, these descriptions and statements justify Defendant's withholding of the documents. The Court finds that Defendant has met its segregability obligation for the documents withheld under Exemption 7(C). Therefore, those documents have been properly identified, described and withheld from Plaintiff. Summary judgment will be entered in favor of Defendants for Documents 1, 2, 3, 4, 5, 6, 11, 15 and 16.

**E. Plaintiff's motion to compel**

Having determined that Defendant is entitled to summary judgment on the adequacy of the records search and that all documents described in the <u>Vaughn</u> index were properly withheld, Plaintiff's motion to compel will be dismissed as moot.

**IV. CONCLUSION**

The Court finds that Defendant's search for records was adequate and that all documents described in the <u>Vaughn</u> index were properly withheld under Exemptions 5 & 7(C). Defendant,

therefore, is entitled to summary judgment. Plaintiff's motion to compel is dismissed as moot. An accompanying Order will be entered.


**July 25, 2013**                        **_s/ Jerome B. Simandle_**
Date                                     JEROME B. SIMANDLE
                                         Chief U.S. District Judge